# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Melissa Taylor and Douglas St. Pierre,

                   Plaintiffs,

v.

DLI Properties, L.L.C., d/b/a Ford Field, S.A.F.E. Management, LLC, Donna Farmer, Sabrina Wiggins,

                   Defendants.

Case No. 15-cv-13777

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

_____/

## AMENDED OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [21] AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [23]

This is a personal injury case arising out of an interaction on October 27, 2013, at Ford Field in Detroit, Michigan, during a football game. Defendants move for partial summary judgment on plaintiffs' negligence and negligence-related claims, negligent infliction of emotional distress ("NIED") claim, premises liability, and disability discrimination claims. (Dkt. 21.) Plaintiffs move for partial summary judgment on their disability discrimination claims and their assault

and battery claim. (Dkt. 23.) For the reasons set forth below, defendants' motion is granted in part and plaintiffs' motion is denied.

## I. Background

Plaintiffs Melissa Taylor and Douglas St. Pierre, who were engaged but not married at the time, attended a football game at Ford Field in Detroit, Michigan on October 27, 2013. A few weeks before attending the game, St. Pierre had open heart surgery. Defendant DLI Properties is the company that manages Ford Field; it contracted with defendant S.A.F.E. Management, LLC to provide personnel for Ford Field, including guest services and security. Defendants Donna Farmer and Sabrina Wiggins are employees of S.A.F.E. Management who were working at Ford Field on October 27, 2013. Farmer and Wiggins were Courtesy Team members whose job was to assist patrons and monitor the area or areas to which they were assigned.

Near halftime of the football game, St. Pierre needed to use the bathroom. Plaintiffs allege that they found a family restroom, and attempted to use it together, so that Taylor could assist St. Pierre, whom she claims needed her help as a result of the surgery. They state that when they attempted to enter the restroom together, Farmer was

2

stationed nearby and told them they could not enter because the restroom was for "families." (Dkt. 1 at 6.) Plaintiffs state they informed Farmer of St. Pierre's medical condition, after which Farmer and Wiggins used physical force on Taylor to prevent her from entering the restroom.

Defendants argue that Farmer was not made aware of St. Pierre's medical condition, and did not initiate the altercation with Taylor. (Dkt. 21 at 14.) Farmer perceived Taylor to be intoxicated and aggressive, and states that she did not know St. Pierre required assistance. (*Id*.) Farmer alleges that Taylor grabbed her shirt collar, and she attempted to free herself. (*Id*. at 15.) Wiggins denies that she physically assaulted Taylor, and alleges that Taylor attacked her with a beer bottle and called her a "black bitch." (*Id*. at 16.) Wiggins also alleges that Taylor ran away from her after attacking her, and entered the stands of Ford Field, prompting Wiggins to attempt to remove her. (*Id*.) The police eventually escorted Taylor off of the premises. (*Id*.)

On October 26, 2015, plaintiffs filed suit, asserting nine counts: 1) negligence; 2) assault and battery against Farmer and Wiggins; 3) intentional infliction of emotional distress; 4) NIED; 5) negligent hiring;

6) negligent training and supervision; 7) premises liability; 8) violation of Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA"); and 9) violation of Title III of the Americans with Disabilities Act ("ADA"). (Dkt. 1.) On March 28, 2017, defendants filed a motion for partial summary judgment, seeking dismissal of the negligence, negligent hiring, negligent training and supervision, NIED, premises liability, PWDCRA (as to Wiggins), and ADA claims. (Dkt. 21.) That same day, plaintiffs filed a motion for partial summary judgment, seeking judgment in their favor on their assault and battery, PWDCRA, and ADA claims. (Dkt. 23.) The motions are fully briefed, and oral argument is not required. E.D. Mich. Local R. 7.1(f)(2).

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

### A. Negligence Claims

Defendants seek summary judgment as to each of plaintiffs' negligence-related claims.  First, they argue, the negligence claims against Farmer and Wiggins are restatements of plaintiffs' assault and battery, PWDCRA, and ADA claims.  Second, they argue the negligence claims against DLI Properties and S.A.F.E. Management are restatements of the more specific negligent hiring and negligent training and supervision claims.  Third, they argue the negligent hiring and negligent training and supervision claims are not actionable because if Wiggins and Farmer did commit the acts of which they were accused, they were neither acting within the scope of their employment, nor did DLI Properties and S.A.F.E. Management know or should have known of any propensity either individual had to assault patrons.

### 1. Negligence (Count I)

On its face, plaintiffs' negligence claim asserts that Wiggins and Farmer acted negligently by committing assault and battery on Taylor, and by denying St. Pierre access to the bathroom. (Dkt. 1 at 5-7.) In Michigan, "[t]here exists no tort of negligent assault and battery." *Allstate Ins. Co. v. Clarke*, Nos. 248934, 249398, 2007 WL 2710821, at *3 (Mich. Ct. App. Sept. 18, 2007) (citing *Sudul v. City of Hamtramck*, 221 Mich. App. 455, 460-61 (1997)). Likewise, the Court can find no support for the proposition that "negligent" violation of the PWDCRA and ADA constitutes a claim separate from the underlying violations themselves.

Plaintiffs respond that they are permitted to assert different theories of liability, and that the negligence claims refer only to "a verbal argument with Plaintiffs in public in which they denied them the right to use the restroom." (Dkt. 29 at 15.) Regardless of whether plaintiffs may assert different theories of liability, they may not convert a claim for intentional violation of a statutory duty, such as violation of the PWDCRA or ADA, into a claim for negligence, particularly where they can identify no duty other than the duty already embodied in the

statute. Accordingly, summary judgment is warranted as to the negligence claims asserted against Farmer and Wiggins.

Next, defendants argue that the general negligence claims against DLI Properties and S.A.F.E. Management are duplicative of the more specific negligent hiring and negligent training and supervision claims. In response to this argument, plaintiffs extensively argue the grounds for their more specific negligent hiring, training, and supervision claims. (*Id*. at 15-21.) Because the general negligence claim is duplicative of the more specific claims, the general negligence claim is dismissed.

## 2. Negligent Hiring, Training, and Supervision (Counts V and VI)

The record evidence demonstrates that Wiggins and Farmer were employees of S.A.F.E. Management alone, and not DLI Properties. Wiggins stated that she was employed by S.A.F.E. Management. (Dkt. 21-5 at 4.) Farmer also stated that the "entity [she] actually work[ed] for" was "S.A.F.E. Management." (Dkt. 21-4 at 5.) In response, plaintiffs cite a portion of the deposition transcript of Kathy Ruehle, whom plaintiffs claim was Wiggins and Farmer's manager. (Dkt. 29 at 19.) Unfortunately, plaintiffs neglected to provide the relevant portion

of the deposition, and cite to pages that do not contain the relevant testimony.

Regardless, plaintiffs point to Ruehle answering a question about "the scope of [Wiggins and Farmer's] employment with S.A.F.E." (*Id.*) Plaintiffs have provided no evidence that DLI Properties employed Wiggins and Farmer. Accordingly, summary judgment is warranted as to DLI Properties on plaintiffs' negligent hiring, training, and supervision claims, as DLI Properties did not hire, train, or supervise Wiggins and Farmer. *See also Campbell v. Kovich*, 273 Mich. App. 227, 233-34 (2006) (holding that a premises owner is generally not liable for injuries that a contractor negligently causes).

"Michigan courts have recognized a cause of action for negligent hiring where an employee commits a foreseeable act of physical violence." *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 797 (E.D. Mich. 1996) (citing *Bradley v. Stevens*, 329 Mich. 556 (1951)). "An employer is generally liable for the torts its employees commit within the scope of their employment. It follows that an employer is not liable for the torts committed by an employee when those torts are beyond the scope of the employer's business." *Hamed v. Wayne Cty.*, 490 Mich. 1,

10-11 (2011) (internal quote marks and citations omitted). "Although an act may be contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id*. at 11. The negligent training, hiring, and supervision will be analyzed through the lens of this *respondeat superior* liability.

Defendants argue that both Wiggins and Farmer were trained not to use physical force against patrons, and that any use of physical force was not within the scope of their employment or for the benefit of their employer. Plaintiffs respond that DLI Properties, not S.A.F.E. Management, is liable for Wiggins and Farmer's alleged actions. Although this would seem to effectively concede defendants' point regarding S.A.F.E. Management's liability, the Court will assume that this is unclear drafting, rather than a concession as to liability.

Defendants argue that the alleged assault and battery was neither within the scope of Wiggins and Farmer's employment, nor for the benefit of their employer. They cite *Burch v. A & G Assocs., Inc.*, 122 Mich. App. 798 (1983) and *Martin v. Jones*, 302 Mich. 355 (1942) as cases supporting the proposition that assault and battery by Wiggins

and Farmer could not have been within the scope of S.A.F.E. Management's business, or for its benefit. However, *Burch* concerned a taxicab driver who robbed and assaulted a passenger after the passenger had paid and left the vehicle, at which point the taxicab driver was no longer performing his job of transporting a passenger. 122 Mich. App. at 804-06. *Martin* concerned an employee at an oil station who shot a customer following an argument unrelated to and separate from his job duties. 203 Mich. at 356. In both cases, no credible argument could be made that the employee was acting in the employer's interest.

"The purpose of the service rendered by the employee, and not the method of performance, is the test of whether or not the servant is within the scope of [her] employment." *Renda v. Int'l Union, United Auto., Aircraft and Agr. Implement Workers of Am.*, 366 Mich. 58, 95 (1962) (citing *Loux v. Harris*, 226 Mich. 315, 321 (1924)). Defendants' argument is that because Wiggins and Farmer were not permitted to take the actions alleged, they could not have been acting within the scope of their employment or for the benefit of their employer. However, in the light most favorable to plaintiffs, Wiggins and Farmer

were acting squarely within the scope of their employment as Courtesy Team members whose job was to assist patrons at Ford Field and address disturbances as they arose.

Defendants' reading of "scope of employment" is too narrow, allowing an employer to escape liability so long as an employee was not instructed to do their job in a way that would give rise to liability in tort. That is not the rule. A genuine issue of material fact exists as to whether Farmer and Wiggins were acting within the scope of their authority, and whether they committed tortious acts. Accordingly, summary judgment as to the negligent hiring, training, and supervision claims against S.A.F.E. Management must be denied.

## B. Negligent Infliction of Emotional Distress (Count IV)

> [T]he elements of negligent infliction of emotional distress are: (1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not presence, at least shock 'fairly contemporaneous' with the accident.

*Hesse v. Ashland Oil*, 466 Mich. 21, 34 (2002) (citing *Wargelin v. Sisters of Mercy Health Corp.*, 149 Mich. App. 75, 81 (1986)). At the time of the incident, plaintiffs were not married. Defendants argue that this claim must be dismissed because plaintiffs did not have the relationship required to assert an NIED claim. Plaintiffs fail to address this argument, and instead argue that defendants committed intentional infliction of emotional distress, which is a separate claim for which defendants do not seek summary judgment.

Because plaintiffs were unmarried at the time of the incident at issue in this case, the specific requirements of an NIED claim under Michigan law have not been met. *See Nugent v. Bauermeister*, 195 Mich. App. 158, 160-61 (1992) (holding that the familial limitations set forth above "have consistently been applied by this Court," declining to expand the class of persons who may recover under an IIED claim, and collecting cases). This claim must be dismissed.

### C. Premises Liability (Count VII)

Plaintiffs claim that the presence of "negligently hired, negligently trained, and negligently supervised security persons being on the Defendants' premises" constituted a "hazardous condition" giving rise to

12

premises liability. (Dkt. 1 at 18.) Defendants seek summary judgment on this claim, arguing that premises liability exists only for injuries arising out of a condition on the land, rather than activity or conduct that takes place on the land. *James v. Alberts*, 464 Mich. 12, 18-19 (2001); *Laier v. Kitchen*, 266 Mich. App. 482, 484 (2005). Defendants are correct, and plaintiffs do not dispute their argument.

Premises liability is limited to a condition on the land and does not cover negligent or intentional conduct committed on that land. *See, e.g., Hall v. IKEA Prop. Inc.*, 171 F. Supp. 3d 634, 640 (2016) (holding that a premises liability claim arose from conditions on the land, and an ordinary negligence claim arose from conduct on the land). Accordingly, plaintiffs' premises liability claim, which alleges only conduct and no condition of the land, must be dismissed.

### D. PWDCRA – Wiggins (Count VIII)

Plaintiffs claim that Wiggins violated St. Pierre's rights under the PWDCRA by denying him use of the family restroom. Defendants move for summary judgment on this claim, based on plaintiffs' admission during deposition that Wiggins did not participate in any denial of St. Pierre's access to the restroom.

Taylor testified in her deposition that the first time she encountered Wiggins was after she had left the bathroom area and rounded a corner, and Wiggins allegedly tackled her from behind. (Dkt. 21-2 at 17.) St. Pierre testified that he never saw Wiggins on the date of the incident. (Dkt. 21-3 at 19.) Wiggins testified that she talked to Taylor away from the bathroom at some time after St. Pierre had allegedly been denied access to the bathroom, and told Taylor that two people could not go in the family bathroom at one time. (Dkt. 21-5 at 11.) At the time Wiggins talked to Taylor, Wiggins indicated that Taylor "did not want to go back to the family rest room" and that after their conversation, Taylor ran into a seating section inside the stadium. (*Id*. at 11-13.)

Even in the light most favorable to plaintiffs, the evidence does not show that Wiggins played any role in denying St. Pierre "equal opportunities to . . . utiliz[e] . . . public accommodations, services, and facilities." *Stevens v. Inland Waters, Inc.*, 220 Mich. App. 212, 216 (1996). Instead, it shows that Wiggins interacted with Taylor away from the bathroom, and, at most, informed Taylor of her belief regarding how many people were permitted inside the family bathroom

at one time. Wiggins is not alleged to have performed any action that would have denied St. Pierre access to the bathroom, and so summary judgment must be granted to her on plaintiffs' PWDCRA claim.

### E. ADA (Count IX)

Plaintiffs assert a claim under the ADA, alleging denial of access to a public accommodation. Their complaint seeks "statutory attorney fees" and "whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars is found to be fair and just, plus interest, costs and attorney fees." (Dkt. 1 at 25-26.) Defendants move for summary judgment, arguing that a plaintiff cannot seek monetary damages for a claim under Title III of the ADA.

Title III of the ADA governs claims of discrimination regarding the use of public accommodations. 42 U.S.C. § 12181 *et seq.* Only declaratory and injunctive relief are available in civil actions brought by private individuals. 28 C.F.R. § 36.501. Damages are not available in Title III suits brought by private individuals. *Southwell v. Summit View of Farragut, LLC*, 494 Fed. Appx. 508, 512 (6th Cir. 2012) (citing *Smith v. Wal-Mart Stores, Inc.*, 1167 F.3d 286, 293 (6th Cir. 1999)). Plaintiffs argue in the caption to the section of their response brief that

"this lawsuit seeks to prevent Defendants from engaging in any further civil and equal rights violations concerning restroom public accommodations." (Dkt. 29 at 24.) However, the complaint on its face contains no request for declaratory or injunctive relief, and plaintiffs have never sought leave to amend their complaint to seek such relief.

Plaintiffs also seem to argue that because attorney fees are recoverable under the ADA, 42 U.S.C. § 12188, a suit can be maintained seeking only attorney fees, even if no substantive relief can be obtained. Not only does this completely upend the notion that attorney fees are traditionally awarded only to prevailing parties, *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 600 (2001), it is entirely unclear how and when an attorney could recover fees by litigating a claim under which his clients could never gain relief. Accordingly, plaintiffs' ADA claim is dismissed.

### F. PWDCRA - All Defendants (Count VIII)

Plaintiffs move for summary judgment on St. Pierre's PWDCRA claim, arguing that defendants admitted their liability during various depositions. Defendants contend that genuine issues of material fact exist regarding this claim.

> To establish a prima facie case that he was denied a reasonable accommodation, plaintiff must prove that (1) he is disabled as defined under the PWDCRA, (2) defendants knew of his disability or should reasonably be expected to know of it, (3) an accommodation of his disability "may be necessary" pursuant to M.C.L. § 37.1506a(1)(a) or (b) to afford him an equal opportunity to use and enjoy the premises and did not present an undue hardship on defendants under M.C.L. § 37.1102(2), and (4) defendants refused to make such an accommodation.

*Bachman v. Swan Harbour Ass'n*, 252 Mich. App. 400, 426 (2002). The PWDCRA defines "disability" in the context of public accommodation as "[a] determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic . . . is unrelated to the individual's ability to utilize and benefit from a place of public accommodation or public service." M.C.L. § 37.1103(d)(i), (d)(i)(B).

Plaintiffs argue that defendants have admitted St. Pierre's recovery from open heart surgery constitutes a disability, based on this exchange with Ruehle:

> Q: Are you familiar with the fact that the term disability, as referenced in the Americans with Disability Act, is a broad term in terms of what a disability is?
> A: Correct.

17

Q: And you understand that it does not have to be a physical, visual disability?
A: Yes.
Q: You understand that it could apply to someone who has recently undergone some type of major surgery and is limited in his ability to function in some type of way?
A: Yes.
Q: And you understand that type of person is supposed to be provided access to facilities such as the use of a bathroom?
A: Yes.

(Dkt. 23-4 at 21.)

This exchange is not an admission that St. Pierre was disabled within the meaning of the PWDCRA. The question asked of Ruehle was whether she understood that the term disability *could* apply to someone in St. Pierre's position. She admitted (accurately) that under the ADA, St. Pierre could be considered disabled – not that he was, and not that he would also be considered disabled under the PWDCRA.

Also, the PWDCRA contemplates a "physical or mental characteristic of an individual," and plaintiff's counsel explicitly states that he is not asking about a "physical, visual disability." It is unclear from this line of questioning whether St. Pierre is now contending he had a physical or mental characteristic, what the physical or mental

characteristic was, and what relation the characteristic had to his ability to use a public restroom.

St. Pierre makes no other argument and presents no other evidence that he is disabled within the meaning of the PWDCRA. Because St. Pierre has failed to establish his disability within the meaning of the PWDCRA, summary judgment on this count must be denied.

### G. Assault and Battery (Count II)

Plaintiffs assert that Farmer and Wiggins committed assault and battery as to Taylor, and that DLI Properties and S.A.F.E. Management are vicariously liable for their employees' actions. Plaintiffs argue, without differentiation, that all defendants committed assault and battery as to Taylor. However, they cite only Farmer's deposition testimony and Farmer's actions in their motion for summary judgment, leading the Court to infer that plaintiffs only move for summary judgment as to the assault and battery claims asserted against Farmer. (*See* Dkt. 23 at 17-19.)

Plaintiffs rely on *People v. Awashra*, Dkt. No. 282692, 2009 WL 1067560 (Mich. Ct. App. Apr. 21, 2009) (erroneously cited as *People v.*

*Adib*) in support of their argument that Farmer committed assault. However, *Awashra* is a criminal case involving felonious assault, and is inapplicable in a civil case. *Awashra*, 2009 WL 1067560, at *2. "To recover civil damages for assault, plaintiff must show an intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *VanVorous v. Burmeister*, 262 Mich. App. 467, 482-83 (2004).

Plaintiffs allege that Farmer put her arm out in front of Taylor to prevent Taylor from entering the restroom, which constituted assault.[1] The evidence presented are three exchanges from Farmer's deposition testimony in which she purportedly admitted sticking her arm out or getting in front of Taylor. The first exchange is as follows, with plaintiff's counsel questioning and Farmer answering:

---

[1] In their motion for partial summary judgment, plaintiffs state that "Defendants [*sic*] physical actions or gestures in threatening to prevent Plaintiffs' movement is an assault," (Dkt. 23 at 18), which appears to be an allegation that both Taylor and St. Pierre were assaulted. However, only Taylor has asserted a claim for assault and battery, (Dkt. 1 at 9-10), and plaintiffs may not amend their complaint in a motion for summary judgment. The Court will assess the assault and battery claims only as to the plaintiff who has asserted them: Taylor.

Q: But in addition to asking her or telling her one at a time, you got in her line of walking basically to prevent her from entering?

A: Yes, because we have already had the conversation about the bathroom.

(Dkt. 23-6 at 14.) However, immediately before that exchange, Farmer states that she stood by the door as Taylor pushed past her:

Q: Did you put your arm out to stop Ms. [Taylor] from going into the rest room?

A: No, I just kind of stood over by the door to let her know that – everything happened so fast, that one at a time, that Mr. Pierre is allowed to use the rest room, yes.

Q: So she proceeded to go into the rest room?

A: Very aggressively, yeah.

Q: And what did you do to prevent her from going in there?

A: I didn't do anything. I just stood to the side to tell her one at a time.

Q: So did she try to walk past you when you told her that?

A: Yes, she did.

Q: And when she tried to walk past you what did you do?

A: I didn't do anything, she grabbed me.

Q: So she walked past you to use the rest room and then grabbed you?

A: No, she didn't walk past me, she attempted to walk past me. I was right here by the bathroom door.

Q: So you were blocking her from using the rest room?

A: Yes, by asking her one at a time.

(*Id*.) In context, Farmer's testimony is inconsistent with an allegation of assault. In the light most favorable to Farmer as the non-moving

21

party, her testimony demonstrates that she stood by the door of the bathroom to remind Taylor that only St. Pierre was allowed in, at which point Taylor moved toward Farmer and grabbed her. Taylor states that Farmer was the one who put her arm out, blocked Taylor from going into the restroom, and then initiated physical contact. (Dkt. 23-2 at 15.) At the very least, this creates a genuine issue of material fact between the two versions of events.

The second exchange plaintiffs rely on regards Farmer's hypothetical rationale for putting her arm out in front on Taylor:

> Q: But the purpose of putting it out there or putting your arm out there would have been to prevent her from going in while you were telling her one at a time?
> A: Yes.

(Dkt. 23-6 at 15.) However, immediately before this exchange, Farmer stated that she could not recall if she had put her arm in front of Taylor. (*Id*.) In fact, Farmer repeatedly states that she could not recall if she had put her arm up to stop Taylor. (*See id*. at 14.) It is also clear from context that this exchange with Farmer did not regard her admission that she put her arm up. It was instead an exploration of her motives

for putting her arm up, in the words of plaintiff's counsel, "if [she] did put it up." (*Id*. at 15.)

The final exchange plaintiffs rely on is this one:

> Q: You testified earlier, in fact, that at least per your testimony that Ms. Taylor attempted to enter the rest room with Mr. St. Pierre and that's when you put your arm out or got in the way or whatever?
> A: Yes.

(*Id*. at 21.)  Because of the manner in which this question was phrased, the answer cannot serve as an admission of any act of assault. Plaintiff's counsel asks if Farmer "put her arm out or got in the way or whatever."  Farmer responds in the affirmative, which means that she either put her arm out, got in the way, or did "whatever," which could include any other action she may or may not have taken.  Coupled with her denials and inability to recall if she had put her arm out or gotten in Taylor's way, Farmer's response to this completely open-ended question cannot be evidence of her having committed an assault on Taylor.  Accordingly, summary judgment must be denied on Taylor's assault claim.

"To recover for battery, plaintiff must demonstrate a willful and harmful or offensive touching of another person which results from an

act intended to cause such a contact." *VanVorous*, 262 Mich. App. at 483 (2004). Plaintiffs argue that because Farmer intended to "put [her] body and [her] arm out to block [Taylor] and prevent [Taylor] from entering," and physical contact resulted, summary judgment is warranted on Taylor's battery claim. (Dkt. 23 at 18-19.) However, as set forth above, there are genuine issues of material fact as to whether Farmer committed any act intended to cause contact with Taylor, and whether it was Farmer or Taylor who committed the harmful or offensive touching of the other person. Accordingly, summary judgment must also be denied on Taylor's battery claim.

## H. Intentional Infliction of Emotional Distress (Count III)

Fed. R. Civ. P. 56(f) permits the Court to grant summary judgment even where it has not been moved for "[a]fter giving notice and a reasonable time to respond." "In order to state a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 582 (1999). "Liability for

such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 582-83.

Plaintiffs allege that "[d]efendants committed an intentional infliction of emotional distress upon Plaintiff Melissa Taylor." (Dkt. 1 at 11.) First, based on the facts as set forth above, any IIED claim against DLI Properties or S.A.F.E. Management is actually a restatement of plaintiffs' negligent hiring, training, and supervision claim. It is clear that summary judgment should be granted as to those two defendants on this claim. Second, the complaint fails to allege which specific acts Wiggins and Farmer committed that rise to the level of "extreme and outrageous conduct." On review of the relevant case law and the record established in this case, it is unclear how this claim may be maintained against Wiggins or Farmer.

Accordingly, plaintiffs and defendants are required to submit briefing, to be no longer than seven pages, addressing whether the Court should grant summary judgment to defendants on Melissa Taylor's IIED claim. The briefing is due on or before July 28, 2017.

## IV. Conclusion

For the reasons set forth above, it is hereby ordered that:

Defendants' motion for partial summary judgment (Dkt. 21) is GRANTED IN PART on plaintiffs' negligence (Count I), negligent infliction of emotional distress (Count IV), premises liability (Count VII), and ADA (Count IX) claims for all defendants, plaintiffs' negligent hiring, training, and supervision (Counts V, VI) claims against DLI Properties, and plaintiffs' PWDCRA claim (Dkt. VIII) for Wiggins, and DENIED IN PART on plaintiffs' negligent hiring, training, and supervision (Counts V, VI) claims against S.A.F.E. Management;

Plaintiffs' motion for partial summary judgment (Dkt. 23) is DENIED;

The remaining claims in this case are Taylor's assault and battery (Count II) claim, Taylor's IIED (Count III) claim, plaintiffs' negligent hiring, training, and supervision (Counts V, VI) claims against S.A.F.E. Management, and St. Pierre's PWDCRA (Count VIII) claim against Farmer, DLI Properties, and S.A.F.E. Management; and

The parties are ordered to submit briefing regarding a grant of summary judgment on Melissa Taylor's IIED claim, to be no longer than seven pages, on or before July 28, 2017.

IT IS SO ORDERED.

Dated: July 17, 2017                       s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 17, 2017.

                                        s/Shawna Burns
                                        SHAWNA BURNS
                                        Case Manager