# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Melissa Taylor and Douglas St. Pierre,

        Plaintiffs,

v.

DLI Properties, LLC, d/b/a Ford Field, S.A.F.E. Management, LLC, Donna Farmer, and Sabrina Wiggins,

        Defendants.

Case No. 15-13777

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION [67] AND DOUGLAS DYMARKOWSKI'S MOTION TO SUBSTITUTE TRUSTEE AS PLAINTIFF [74]

Plaintiff Melissa Taylor's personal injury claims against defendants S.A.F.E. Management, LLC, Donna Farmer, and Sabrina Wiggins were dismissed on September 28, 2018, for failure to state a claim.[1] (Dkt. 65.) The Court found that Taylor was judicially estopped from asserting her

---

[1] The Court provided a complete factual background of this case in its Opinion and Order granting defendants' motion to dismiss (Dkt. 65), which the Court incorporates here by reference.

claims because she failed to include them in her Chapter 7 bankruptcy petition. (*Id.*) Plaintiffs filed a Motion for Reconsideration. (Dkt. 67.) Supplemental briefing was ordered in response to plaintiffs' first ground for reconsideration, in which plaintiff argued that the Court improperly dismissed Taylor's claims because they belong to her bankruptcy trustee, Douglas Dymarkowski. (Dkt. 69.) The briefing was complete. (Dkts. 71, 73.) Then, Dymarkowski filed a motion to substitute himself as plaintiff (Dkt. 74), and the parties responded. (Dkts. 75, 76.) The Court now considers the motions together.

**I.  Legal Standard**

To prevail on a motion for reconsideration under Local Rule 7.1, a movant must "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(h)(3). "A palpable defect is a defect that is obvious, clear, unmistakable, manifest or plain." *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997). The "palpable defect" standard is consistent with the standard for amending or altering a judgment under Federal Rule of Civil Procedure 59(e), that there was

2

"(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006). Motions for reconsideration should not be granted if they "merely present the same issues ruled upon by the court, either expressly or by reasonable implication," E.D. Mich. LR 7.1(h)(3), or if the "parties use . . . a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007).

**II. Analysis**

Plaintiffs argue that the opinion and order dismissing Taylor's remaining claims contains two palpable defects within the meaning of Local Rule 7.1(h)(3): first, the Court improperly dismissed Taylor's claims because they belong to Dymarkowski, and second, the Court's application of judicial estoppel to Taylor's conduct was incorrect. (Dkt. 67.) As to the first ground, there was a palpable defect, a clear error of law, but it does not affect the disposition of this case because the Court denies

3

Dymarkowski's motion to substitute.[2] And as to the second ground, plaintiffs fail to show that there was a palpable defect in the Court's judicial estoppel analysis according to the Rule 59(e) standard.

> *A. Ground One: The Claims Belong to the Trustee, but the Disposition of the Case is Unaffected.*

Plaintiffs argue that Taylor's personal injury claims legally belong to Dymarkowski, and so the Court cannot dismiss them because Taylor would be judicially estopped from bringing them. (Dkt. 67 at 3.) Plaintiffs are correct that a court cannot dismiss claims under the doctrine of judicial estoppel as applied to the bankruptcy petitioner because it would unfairly penalize the bankruptcy trustee for the petitioner's conduct. (*Id.* (citing *Stephenson v. Malloy*, 700 F.3d 265, 272 (6th Cir. 2012).) But the underlying legal issue is that Taylor has no standing to bring these claims because the claims do not belong to her. (Dkt. 69 at 4–6 (citing *Auday v. Wet Seal Retail, Inc.* 698 F.3d 902, 903 (6th Cir. 2012).)

However, a court may only grant a motion for reconsideration if "correcting the defect will result in a different disposition of the case."

---

[2] Plaintiffs also argue that the Court's application of judicial estoppel to Taylor's conduct is incorrect and that it should have applied it to Dymarkowski because the claims belong to him as trustee. (Dkt. 67 at 10.) Because the Court denies the motion to substitute Dymarkowski, this ground is moot.

4

E.D. Mich. LR 7.1(h)(3). Here, the claims were dismissed with prejudice. (Dkt. 65 at 23.) As noted in the order for supplemental briefing, the Court has three options: (1) grant the motion to reconsider, but maintain the dismissal and find that the claims are dismissed *without* prejudice so Dymarkowski may pursue them later; (2) grant the motion to reconsider, reverse the dismissal, and substitute Dymarkowski, permitting these personal injury claims to go forward; or (3) deny the motion to reconsider because the claims are properly dismissed *with* prejudice, despite Federal Rule of Civil Procedure 17(a)(3). (Dkt. 69 at 7.) The third option is most appropriate.

Rule 17(a)(3) provides: "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." However, courts do not construe this provision literally and "have held that when the determination of a proper party is not difficult and where there has been no understandable mistake, dismissal is warranted despite Rule

5

17(a)(3)."[3] *Barefield v. Hanover Ins. Co.*, 521 B.R. 805, 810 (E.D. Mich. 2014) (citing cases). Courts must still consider substitution before dismissing a case; this is an important caveat. *Id.* (same). Even so, courts have dismissed claims where "substitution would not achieve the purpose of Rule 17(a)(3)," which is "to protect against forfeiture" of claims when it is difficult to determine who the real party in interest is or an understandable mistake has been made as to the proper party. *Id.*

For example, in *Rodriguez v. Mustang Manufacturing Co.*, the court determined that it was inappropriate, despite Rule 17(a)(3), to permit the substitution of a bankruptcy trustee because it was not legally difficult to determine the real party in interest, there was no indication the plaintiff had made a reasonable mistake, and the substitution had not occurred within a reasonable amount of time.[4] No. 07-CV-13828, 2008 WL 2605471, at *3–4 (E.D. Mich. June 27, 2008).

---

[3] For this reason, plaintiffs' argument that defendants did not object to Taylor as plaintiff has no bearing on this analysis. (*See* Dkt. 71 at 5.)

[4] The court in *Rodriguez* considered when the plaintiff had filed and concluded his bankruptcy, more than two years before the civil suit, to find an unreasonable delay. 2008 WL 2605471, at *3. However, it is more consistent with the principle in *Stephenson* that the bankruptcy trustee should not be penalized for the actions of the bankruptcy petitioner, 700 F.3d at 272, to consider when the trustee knew about the claims, rather than when the bankruptcy ended. *See also Canterbury v. Federal-Mogul Ignition Co.*, 483 F. Supp. 2d 820, 827 (S.D. Iowa 2007).

6

Here, the purpose of Rule 17(a)(3) is not fulfilled by permitting the substitution of Dymarkowski. It is not difficult to determine that Dymarkowski had the right to sue. *Id.* at \*4 ("The law of the Sixth Circuit clearly demonstrates that [plaintiff's] bankruptcy trustee had the exclusive right to bring the bankruptcy claim."); *e.g.*, *Auday*, 698 F.3d at 904–05. Plaintiffs also do not show that the failure to substitute Dymarkowski earlier was due to a reasonable mistake. Rather, they argue that Dymarkowski was ignorant of the law, which is not an excuse or a reasonable mistake. (*See* Dkt. 71 at 3.) Moreover, Dymarkowski has had a reasonable time in which to substitute himself as plaintiff. He has known about the personal injury claims since April 2018, but he neglected to determine his rights as trustee and further them for seven months. Instead, with motions flying back and forth, he chose to sit on his rights. Concerns about accidental or unwitting forfeiture are therefore minimal. For these reasons, it is appropriate to deny the motion to substitute, which therefore does not change the disposition of this case. Taylor is still the plaintiff and her claims are still properly dismissed, albeit for a lack of standing.

Plaintiff argues that the Court should substitute Dymarkowski under Rule 17(a)(3) because the statute of limitations prevents the trustee from bringing the claims later, even if the Court determined on this motion that a dismissal of claims without prejudice was proper. (Dkt. 71 at 7–8 (citing *Barefield*, 521 B.R. at 811).) However, this case is distinguishable from *Barefield* because the court there did not consider an unreasonable delay by the trustee to file a motion to substitute and preserve his rights as the real party in interest.

Plaintiff also argues that in *Auday*, the Sixth Circuit required the district court to consider on remand only dismissal without prejudice or substitution. (Dkt. 71 at 6 (citing *Auday*, 698 F.3d at 905–06).) However, these were case-specific remand directions, not a bar on utilizing discretion to dismiss claims with prejudice.

Finally, plaintiffs point to *Canterbury*, arguing that because Dymarkowski did not know about the claims until the statute of limitations had expired, any dismissal "would be inequitable." 483 F. Supp. 2d at 827. Plaintiffs fail to note that the *Canterbury* court expressly considered the swiftness of the trustee's actions to reopen the bankruptcy and "ensure the ongoing vitality of the present claims." *Id.* at 826. In

8

*Canterbury*, the trustee reopened the case two weeks after the defendant's motion raising the plaintiff's failure to disclose the claims in the bankruptcy petition; a week after that, the trustee requested that the bankruptcy court permit him to hire counsel. Then, the plaintiff filed a motion to amend the complaint to substitute the trustee a little over two months after defendant filed the motion.

In contrast, in this case, once he reopened Taylor's bankruptcy case, Dymarkowski did nothing to preserve his claims. He reopened the bankruptcy case on the same day defendants filed their motion to dismiss on judicial estoppel grounds (Dkts. 57, 61-3), but it was not until the Court ordered supplemental briefing over seven months later that Dymarkowski sought appointment of counsel or filed a motion to be substituted. (Dkt. 71 at 3–4.)

Given this analysis, plaintiffs' assertion that equity, justice, and the preparation by the parties for trial require substitution of Dymarkowski under Federal Rule of Procedure 1 is unpersuasive.[5] (*See id.* at 6.)

---

[5] In the alternative, plaintiffs argue that Dymarkowski should be substituted under Federal Rules of Civil Procedure 25(c) and 21. Both rules grant discretion to federal courts to substitute parties. Fed. R. Civ. Pro 21 & 25(c); *e.g.*, *Bauer v. Commerce Union Bank*, 859 F.2d 438, 421–22 (6th Cir. 1988). For the same reasons the Court finds that Rule 17(a)(3) is no bar to denying the substitution, the Court also declines to exercise its discretion to substitute Dymarkowski under these rules. There

9

Dymarkowski failed to actively preserve his right to bring the personal injury claims and pursue them, despite clear law providing for his rights to bring the claims. It is his delay that has delayed the resolution of this case. Therefore, the denial of his motion to substitute is appropriate, and plaintiffs' motion for reconsideration on this ground is denied.

> *B. Ground 2: There is no Palpable Defect in the Earlier Judicial Estoppel Analysis.*

Plaintiffs argue that the Court's judicial estoppel analysis of Taylor's conduct is a palpable defect because the Court did not address certain factors relating to the reopening of the bankruptcy proceedings and because plaintiffs disagree with the Court's application of the judicial estoppel test. (Dkt. 67 at 2, 11.) Although this argument is now moot because Taylor has no standing to bring these personal injury claims and Dymarkowski has not been substituted for her, it warrants addressing because it is blatantly improper under the Local Rules. Local Rule 7.1(h)(3) prohibits parties from restating their arguments simply because they disagree with the Court, but this is precisely what plaintiffs do.

---

was also no transfer of interest because the claims belonged to Dymarkowski all along, and so the Court further declines to substitute him under Rule 25(c).

To determine whether a bankruptcy petitioner is judicially estopped from bringing a civil claim, a court must find that:

> (1) the debtor plaintiff 'assert[ed] a position that is contrary to one that the [plaintiff] has asserted under oath in a [bankruptcy] proceeding . . . [,] (2) the [bankruptcy] court adopted the contrary position either as a preliminary matter or as part of a final disposition,' and (3) the plaintiff's failure to disclose was not due to 'mistake or inadvertence.'

(Dkt. 65 at 10 (quoting *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010).) Under prong three, courts look at whether "there was an absence of bad faith." (*Id.* (quoting *White*, 617 F.3d at 476–77).) Plaintiff fails to show a palpable defect in the Court's analysis of prong one, prong two, and bad faith.

Plaintiffs repeat their earlier arguments under the first prong. (*Compare* Dkt. 67 at 12–13 *with* Dkt. 61 at 15–16.) Plaintiffs do not point to any law, much less different law, that shows the Court committed clear error by applying the wrong law or overtly misapplying the law.

As to the second prong, that the bankruptcy court adopted Taylor's position, plaintiffs focus on the Court's use of the phrase "final disposition" in the opinion and cite law permitting parties to reopen bankruptcy proceedings and indicating bankruptcy closure does not adjudicate rights. (*Id.* at 12–13.) However, plaintiffs still neglect to

address the *White* test, which provides that this prong is satisfied when "the bankruptcy court adopt[s] the contrary position as *either a preliminary matter* or as part of a final disposition." 617 F.3d at 478 (emphasis added). Whether the discharge of debt was a preliminary matter or a final disposition, the result is the same—the bankruptcy court adopted Taylor's contrary position when it discharged her debts. The *White* court considered identical circumstances in holding that the bankruptcy court adopted the plaintiff's contrary position when it discharged the debts. 617 F.3d at 474, 478–79. It did so despite the plaintiff's bankruptcy amendment, which would have required reopening the bankruptcy case. *See id.* at 474. Plaintiffs' effort to obscure clear, binding precedent does not create a palpable defect. This is not a close question of law, much less clear error of law.

Plaintiffs' argument that "[t]he court's analysis of Plaintiff's absence of bad faith is incorrect" (Dkt. 67 at 14) also does not show a palpable defect. Plaintiffs repeat their previous arguments because they believe Taylor's ex post facto efforts to notify the bankruptcy court of her omission should have been credited more than they were. In their closest brush with the palpable defect standard, they argue that the Court's

12

application of *White*, specifically where the Court noted that "more is required" than ex post facto efforts (Dkt. 65 at 16), is "not supported by law." (Dkt. 67 at 15.) In the end, however, plaintiffs merely disagree with the Court's run-of-the-mill analysis, which does not generate a palpable defect.

In its opinion, the Court was not creating a different standard for bad faith than the one enunciated in *White* by stating that "more is required." Rather, the Court summarized its comparison between the actions of the plaintiffs in *White* and *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004), and Taylor. (Dkt. 65 at 16–20.) *White* requires the Court to consider the extent, effectiveness, and timing of Taylor's efforts to inform the bankruptcy court of undisclosed claims, and any other factors that are useful to assess whether she acted without bad faith. 617 F.3d at 480–82. The Court concluded that precedent does not support finding a lack of bad faith when the only efforts she undertook to apprise the bankruptcy court of her omission occurred *after* the defendants raised a judicial estoppel argument, i.e. more is required by the case law to show an absence of bad faith. (Dkt. 65 at 17.)

13

This is consistent with *White*. In *White*, an ex post facto amendment to a bankruptcy petition was insufficient on its own to show a lack of bad faith. *See* 617 F.3d at 481. The *White* court did not consider the clerical steps to file an amendment, such as reopening the bankruptcy case or reappointing the trustee. Those steps, which plaintiffs point to (Dkt. 67 at 2), are inconsequential to the *White* analysis.

Plaintiffs also argue that the Court held that a case must present identical facts as those in *Eubanks* to show an absence of bad faith. (Dkt. 67 at 16.) The Court analyzed the impact of precedent, it did not forge a new judicial estoppel test or standard for showing a lack of bad faith. (*See* Dkt. 65 at 17–18.) *See also White*, 617 F.3d 477–78 (recounting the Sixth Circuit's comparison of cases to *Eubanks* in *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420 (6th Cir. 2005), and conducting its own comparison to *Eubanks*).

Finally, Taylor argues that the Court should have interpreted other factors differently and weighed more heavily the interests of Taylor's creditors. (Dkt. 67 at 10, 14.) *White* permits courts to consider other factors that "undermine the sufficiency of "[plaintiff's] attempts to advise the bankruptcy court of her . . . claim." 617 F.3d at 482. And judicial

estoppel, an equitable doctrine, requires the Court "to weigh the benefits involved and the degree and fault of the parties," including creditors. *See id.* at 485 (Clay, J., dissenting). In its opinion, the Court followed *White*.

As to the other factors the Court considered, plaintiffs address two. First, they assert that Taylor had poor counsel during her first bankruptcy. (Dkt. 67 at 14.) This does not negate what the Court considered, which was that she would have had more knowledge than a person who had never filed for bankruptcy before, when it determined this factor further indicated bad faith. Second, plaintiffs argue that the Court was wrong to find Taylor's amended bankruptcy was a sign of bad faith. (*Id.* at 16–17.) As indicated in the parties' "Joint Final Pretrial Order," Taylor planned to present nearly $200,000 in medical bills to the jury. (Dkt. 54 at 3.) It is a struggle to see how it was palpable error to find the bankruptcy amendment—listing the claim as worth $75,000—evinced bad faith when Taylor herself represented to the Court that it was worth more than twice that.

Finally, plaintiffs fail to show that the Court did not consider the interests of Taylor's creditors or that it abused its discretion when it determined that equity required the Court to find Taylor's fault

outweighed all else. Plaintiffs repeat their earlier arguments, noting that the Court did not explicitly address the creditor's interests. (*See* Dkt. 67 at 10.) The Court found Taylor was judicially estopped, which reasonably implies it determined her fault was greater on balance than all other interests. *See* E.D. Mich. LR 7.1(h)(3) ("[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by . . . reasonable implication."); *see, e.g.*, *White*, 617 F.3d at 484 (finding plaintiff was judicially estopped despite the interests of her creditors). Taylor may wish for a different outcome, but that does not create a palpable defect.

## III. Conclusion

For the reasons set forth above, the Court's palpable error in dismissing claims for judicial estoppel reasons, rather than because Taylor lacked standing, has no effect on the disposition of the case because the purpose of Rule 17(a)(3) is not fulfilled by granting the motion to substitute the trustee. The remainder of plaintiffs' motion for reconsideration is therefore moot.

Accordingly, the motions for reconsideration (Dkt. 67) and to substitute the trustee (Dkt. 71) are **DENIED**.

16

IT IS SO ORDERED.

Dated: December 19, 2018     s/Judith E. Levy
    Ann Arbor, Michigan      JUDITH E. LEVY
                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 19, 2018.

                             s/Shawna Burns
                             SHAWNA BURNS
                             Case Manager