# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Melissa Taylor and Douglas St.
Pierre,

                Plaintiffs,

v.

DLI Properties, LLC, d/b/a Ford
Field, S.A.F.E. Management, LLC,
Donna Farmer; and Sabrina
Wiggins,

                Defendants.

_____/

Case No. 15-13777

Judith E. Levy
United States District Judge

Mag. Judge David R. Grand

---

## AMENDED OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [57] AGAINST PLAINTIFF MELISSA TAYLOR

Plaintiffs Taylor and Douglas St. Pierre, Taylor's husband, brought this personal injury action based on a confrontation between themselves and Farmer and Wiggins, employees of S.A.F.E. Management, at DLI Properties' Ford Field in Detroit, Michigan. Plaintiffs raised a variety of tort claims against defendants, as well as several disability claims. (Dkt. 1.) Defendants DLI Properties, LLC, S.A.F.E. Management, LLC, Donna Farmer, and Sabrina Wiggins filed a motion to dismiss all of plaintiff

Melissa Taylor's claims. (Dkt. 57.) In their motion to dismiss, defendants argue that Taylor is judicially estopped from raising these claims because she failed to disclose this lawsuit in her Chapter 7 Bankruptcy Petition. (*Id.* at 2-5.)

## I.    Background

As set forth previously in the Court's amended partial summary judgment opinion and order (Dkt. 34), plaintiffs Melissa Taylor and her then-fiancé Douglas St. Pierre attended a football game at Ford Field Stadium in Detroit, Michigan on October 27, 2013. Defendant DLI Properties, LLC, since dismissed (Dkt. 41 at 2), owns the property and contracted with defendant S.A.F.E. Management, LLC to provide guest services and security. S.A.F.E. Management employed defendants Donna Farmer and Sabrina Wiggins as Courtesy Team members to assist patrons and monitor assigned areas at Ford Field that day.

A scuffle unfolded between plaintiffs and Farmer and Wiggins during the game. Plaintiffs assert that Farmer and Wiggins prevented them from using a family restroom together—which they sought to do because St. Pierre had open heart surgery a few weeks before—and used physical force to do so. (Dkt. 34 at 2-3.) Farmer and Wiggins counter that

that it was actually Taylor who became physically aggressive when Farmer told her that she could not enter the restroom with St. Pierre. (*Id.* at 3.) They also state that they did not know of St. Pierre's medical condition. (*Id.*) Plaintiffs claim that defendants caused personal injuries, and this suit ensued.

Over the course of litigation, the parties and claims have changed. Plaintiffs initially alleged several theories of tort liability against defendants, under both intentional torts and negligence, as well as violations of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA") and Title III of the Americans with Disabilities Act. (Dkt. 1; Dkt. 29 at 24.) After granting and denying in part defendants' motion for summary judgment and denying plaintiffs' motion for summary judgment (Dkts. 34, 39, 41), these claims remained for trial: Taylor's assault and battery claim against Farmer and Wiggins; plaintiffs' negligent hiring, training, and supervision claims against S.A.F.E. Management; and St. Pierre's PWDCRA claims against Farmer and S.A.F.E. Management. (Dkt. 41 at 2.)

While discovery was underway in this case, Taylor filed a Voluntary Petition for Chapter 7 Bankruptcy on October 5, 2016 in the United

States Bankruptcy Court for the Northern District of Ohio (Dkt. 57-2 at 2)—less than a year after she filed her complaint in this case. This was Taylor's second bankruptcy; the first she filed in 2010, also in the Northern District of Ohio. (Dkt. 57-3.)

The Petition required several affirmations and disclosures. In her Official Form 101, the first form of the Petition, Taylor swore under "penalty of perjury that the information provided [in the petition] is true and correct." (Dkt. 57-3 at 7.) In the Schedule A/B, question thirty-three asked whether Taylor had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment. Examples: Accidents . . . or rights to sue." (*Id.* at 15.) She answered "No." (*Id.*) Taylor had to affirm again under penalty of perjury that her schedules were accurate. (*Id.* at 43.) She did so by signing the document. The Statement of Financial Affairs asked in question nine: "Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding? List all such matters, including personal injury cases . . . ." (*Id.* at 46.) Taylor answered "Yes" and listed some cases, but did not list any claims arising from this case. (*Id.*) Taylor concluded her Statement again by signing under oath that her answers were true

4

and correct. (*Id.* at 49-50.) She did, however, disclose that she was seeking discharge of some of her medical debts arising from this case elsewhere in the Petition in another required schedule. (*Id.* at 27, 30-34.)

After Taylor's Petition was filed, this case and the bankruptcy proceedings went forward. A meeting of creditors was held on November 23, 2016. (Dkt. 57-6 at 2-4.) Taylor's trustee certified her bankruptcy estate, verified the meeting of creditors was held, and requested to be discharged three days later. (*Id.* at 3-4.) Six days after that, Taylor was deposed in this case. (Dkt. 21-2 at 1.) In late January 2017, about two months after the meeting of creditors and Taylor's deposition, the bankruptcy court issued an "Order of Discharge" and a "Final Decree." (Dkt. 57-6 at 5.)

On the eve of trial in this case, defendants filed an "Emergency Motion to Adjourn Trial" (Dkt. 56) and this motion to dismiss Taylor's remaining claims against all defendants. (Dkt. 57.) Defendants' counsel had independently discovered Taylor's Chapter 7 Bankruptcy Petition a little over a week before trial was set to begin. (Dkt. 56.) Defendants argue that Taylor is judicially estopped from asserting her claims here

because she failed to include them in her Petition, specifically in her Schedule A/B and State of Financial Affairs. (*Id.* at 2-3; Dkt. 57 at 2-5.)

Taylor subsequently filed a motion to reopen her bankruptcy case, which the bankruptcy court granted. That court also reappointed her bankruptcy trustee on April 16, 2018. (Dkt. 63-1.) Two days later, she amended her Schedule A/B, listing this claim as worth $75,000. (Dkt. 64.)

## II.  Legal Standard

Because defendants filed their motion to dismiss after they answered plaintiffs' complaint, it must be construed as a motion for judgment on the pleadings. Fed. R. Civ. P. 12(b), 12(c). "A Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) Motion." *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) (citing *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001)). When deciding a motion for judgment on the pleadings, the Court

> must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle

> him to relief . . . [but the district court] is not bound to accept
> as true a legal conclusion couched as a factual allegation.

*Ferron v. Zoomego, Inc.*, 276 F. App'x 473, 475 (6th Cir. 2008) (internal

quotations omitted). A plausible claim need not contain "detailed factual

allegations," but it must contain more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007).

When ruling on a motion for judgment on the pleadings or a motion

to dismiss, courts "primarily consider[ ] the allegations in the complaint,

although matters of public record, orders, items appearing in the record

of the case," and attachments that are "referred to in the plaintiff's

complaint and are central to her claim" are included in the complaint. *See*

*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (internal

quotations omitted). Items of public record are subject to judicial notice

on a motion for judgment on the pleadings. *Commercial Money Ctr., Inc.*

*v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). This includes

bankruptcy proceedings. *See* Fed. R. Evid. 201(2); *see, e.g.*, *Eubanks v.*

*CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004).

Although the Court received and read Taylor's affidavit (Dkt. 62),

the Court declines to consider it, and so this motion is not converted to a

motion for summary judgment. *See Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 297 (6th Cir. 2008); *In re Baker*, 51 F. A'ppx 522, 530 n.3 (6th Cir. 2002). Even if defendants' motion were converted to a motion for summary judgment, however, the affidavit would have no effect because it provides no additional facts that create a genuine issue of material fact. In her affidavit, Taylor affirms that she subjectively misunderstood the questions in her Petition and that her bankruptcy trustee plans to pursue this claim (Dkt. 62), supporting her argument that the trustee is the real party in interest and thus application of judicial estoppel is inappropriate. (Dkt. 61 at 24-25.) As set forth below, a subjective misunderstanding is not "mistake or inadvertence" within the meaning of Sixth Circuit precedent on judicial estoppel. *See infra* Section III.b.iv. And only when a plaintiff actually substitutes a trustee as the real party in interest do courts decline to apply judicial estoppel. *See, e.g.*, *Stevenson v. Haddad*, 529 F. App'x 522, 523-24 (6th Cir. 2013); *Stephenson v. Malloy*, 700 F.3d 265, 270 (6th Cir. 2012); *Brooks v. Cent. Irrigation Supply, Inc.*, No. 10-cv-13717, 2012 WL 6579582, at *5-6 (E.D. Mich. Dec. 17, 2012).

## III. Analysis

"The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). It is "an equitable doctrine meant to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). But judicial estoppel "should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contrary position without examining the truth of either statement.'" *Id.* (same).

Applying judicial estoppel is appropriate when a plaintiff has filed for bankruptcy if a court finds that: (1) the debtor plaintiff "assert[ed] a position that is contrary to one that the [plaintiff] has asserted under oath in a [bankruptcy] proceeding . . . [,] (2) the [bankruptcy] court adopted the contrary position either as a preliminary matter or as part

of a final disposition," and (3) the plaintiff's failure to disclose was not due to "mistake or inadvertence." *White*, 617 F.3d at 476 (quoting *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002)). A court considers the following factors to evaluate whether a debtor plaintiff's failure to disclose a possible or actual lawsuit in a bankruptcy proceeding was the result of a mistake or inadvertence: (a) "the debtor lack[ed] knowledge of the factual basis of the undisclosed claims," (b) "the debtor has no motive for concealment," and (c) there was an absence of bad faith. *Id.* at 476-77 (same).

In this case, the critical question centers on the third prong of the judicial estoppel test, which is whether Taylor's failure to disclose was due to mistake or inadvertence. The first and second prongs of the test are plainly resolved by Sixth Circuit precedent, as are the first two factors of the third prong. This leaves only one factor in question under mistake or inadvertence: whether Taylor acted absent bad faith.

*a. Judicial Estoppel Inquiries Plainly Resolved by Precedent*

The first two prongs of the judicial estoppel test, as well as the first two factors of the third prong are settled by precedent. Under the first prong, the documents from Taylor's Chapter 7 bankruptcy proceedings,

10

which this Court judicially notices, unquestionably show that Taylor asserted a contrary position to the one asserted in this case. Under the second prong, the documents also reveal that the bankruptcy court adopted this position in a final judgment. And under the third prong, Taylor knew of the factual basis of her claims here, and she had motive to conceal these claims.

The first prong is satisfied because Taylor undoubtedly asserted a position in her Petition, that her lawsuit does not exist, contrary to the one here—clearly, that her lawsuit exists. *See, e.g.*, *Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012); *White*, 617 F.3d at 479. Taylor was explicitly obligated by the questions in the Petition to list her claim and had a duty to disclose it in her Schedule A/B and Statement of Financial Affairs under 11. U.S.C. § 521(a)(1)(B), which she did not do. By failing to disclose the claim, she took the position that the claim did not exist. *See, e.g., White*, 617 F.3d at 479 (citing § 521(a)(1)). Taylor offers no competing authority on this point, and her argument that judicial estoppel is inappropriate because she only took a partially contrary position—not a complete one—by listing some medical debts, but not all,

related to her injuries from the events in this case, is contrary to binding precedent and is unpersuasive.

The second prong is also met because it is apparent that the bankruptcy court for the Northern District of Ohio adopted Taylor's position that her claim did not exist in its final disposition of her bankruptcy. *See Stephenson*, 700 F.3d at 274 ("[W]hen the bankruptcy court granted [plaintiff's] discharge . . . it acted in reliance on the representations he made concerning his assets—including the representation that this lawsuit did not exist."); *cf. White*, 617 F.3d at 479 (holding the bankruptcy court adopted plaintiff's contrary position when it confirmed plaintiff's Chapter 13 plan, the final disposition of a Chapter 13 bankruptcy case); *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 425 (6th Cir. 2005) (same); *Browning*, 283 F.3d at 769 (holding the bankruptcy court adopted plaintiff's contrary position when it confirmed plaintiff's Chapter 11 Plan of Reorganization, the final disposition of a Chapter 11 bankruptcy case).

Taylor puts forth a novel argument that the second prong is not met because she reopened her bankruptcy case after this motion was filed, meaning that the bankruptcy court did not actually adopt her position in

its final decree. (Dkt. 61 at 16.) However, Taylor provides no support for this position. This is most likely due to the fact that she places this consideration under the wrong prong of the judicial estoppel test. Generally, courts look at a motion to reopen a bankruptcy case as an effort to advise the bankruptcy court of the omission to determine whether there was a lack of bad faith under the mistake or inadvertence prong, the third prong of the judicial estoppel test. *E.g.*, *White*, 617 F.3d at 481; *Williams v. Saxon Mortg. Servs. Inc.*, No. 13-10817, 2014 WL 765055, at *9 (E.D. Mich. Feb. 26, 2014) (citing *Maxwell v. MGM Grand Detroit, LLC*, No. 03-73134, 2007 WL 2050795 (E.D. Mich. July 16, 2007)); *see infra* Section III.b.i. This is what Taylor herself does when she cites *Knight v. Quicken Loans*, No. 10-CV-14147, Dkt. 17 at 7 (E.D. Mich. April 21, 2011). (Dkt. 61 at 23-24.)

Furthermore, allowing Taylor to evade judicial estoppel by pointing only to her motion to reopen her bankruptcy case would be an end-run around *White*, which held that *post facto* efforts to advise a bankruptcy court of an omission by filing a motion to reopen the bankruptcy case in order to amend filings is insufficient alone to prevent the application of judicial estoppel under the third prong. 617 F.3d at 481; s*ee infra* Section

III.b.i. Permitting Taylor to do so would only undermine the purpose of judicial estoppel by increasing gamesmanship and the need for accurate disclosures in bankruptcy proceedings. *See White*, 617 F.3d at 480-81. There is no support for this Court to examine Taylor's motion to reopen her bankruptcy case after final judgment under both the second prong and third prong of the test. Whether a judgment depended on plaintiff's contradictory position is determined when the judgment was made.

Next, under the third prong, mistake or inadvertence, Taylor undeniably had knowledge of the factual basis of her undisclosed claims at the time of her Petition because this litigation was pending. *See White*, 617 F.3d at 479; *Stephenson*, 700 F.3d at 274. This litigation was not out of sight and out of mind; in between the meeting of creditors and the final bankruptcy decree, Taylor was deposed in this case. She even included some of her debts from the medical bills arising from the events underlying this case in her bankruptcy schedules. Taylor not only knew of the factual basis of her claims, but also that her claims had value. *See Bone v. Taco Bell of America, LLC*, 956 F. Supp. 2d 872, 882 (E.D. Tenn. 2013) (holding a plaintiff knew of the factual basis of her claim because she claimed "medical debt related to her injury").

Finally, Taylor certainly had a motive for concealment. The Sixth Circuit has held that where a plaintiff filed a lawsuit prior to filing her Petition, the plaintiff had "a motive for concealment [because] if the [ ] claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying [plaintiff's] creditors, rather than simply to paying [plaintiff]." *White*, 617 F.3d at 479 (citing *Lewis*, 141 F. App'x at 426); *see also Stephenson*, 700 F.3d at 274. In fact, "[i]t is always in a Chapter 13 [Bankruptcy] petitioner's interest to minimize income assets." *Lewis*, F. App'x at 426. This is presumably more so for Chapter 7 petitioners because all of their debts are discharged. *See Bone*, 956 F. Supp. 2d. at 883 (citing *Stephenson*, 700 F.3d at 274).

### b. *Absence of Bad Faith*

An absence of bad faith, the final factor courts consider under mistake or inadvertence, can prevent a court from applying judicial estoppel. *See White*, 617 F.3d at 476-77 (discussing *Eubanks*, 385 F.3d at 895, 898-99). A plaintiff can demonstrate an absence of bad faith "by showing her attempts to correct her initial omission," including the extent, effectiveness and timing of such efforts. *Id.* at 480. Courts examine a plaintiff's attempts to notify the bankruptcy court of omissions

because "the bankruptcy system depends on accurate and timely disclosures." *Id*. Further, the timing of efforts to advise a bankruptcy court can make a difference in this context because the goal is to prevent gamesmanship. *Id*. "Other factors," such as the inclusion of other lawsuits, also play into this inquiry. *Id*. at 482.

Taylor argues that she took swift measures to re-open her bankruptcy case and amend her schedule when defendants filed their motion to dismiss. (Dkt. 61 at 12-13, 24.) But when a plaintiff makes efforts to advise the bankruptcy court of an undisclosed claim *after* a dispositive motion has been filed against her alleging judicial estoppel, more is required. The extent, timing, and effectiveness of her efforts to advise the bankruptcy court of this lawsuit, as well as the fact that Taylor listed other lawsuits in her Petition and that this was her second bankruptcy, demonstrate there are no facts showing she failed to disclose this lawsuit absent bad faith.

i. Extent and Timing of Efforts to Advise Bankruptcy Court

A plaintiff can successfully show an absence of bad faith when a plaintiff goes to a great extent by making "numerous attempts . . . [*before* a motion from defendant] to advise the [bankruptcy] court and the

Trustee of their claim" through "correspondence, motions, and status conference requests," and amendments to the bankruptcy petition. *Eubanks*, 385 F.3d at 897-99. In other words, a plaintiff's "constant affirmative actions" before a defendant files a motion can convince a court that the plaintiff asserted sufficient factual matter indicating a lack of bad faith in response to a motion to dismiss. *Id.* at 899 n.3.

In contrast, a lack of any effort and *post facto* efforts alone are insufficient to show the failure to disclose was without bad faith. In *Lewis*, making no efforts to advise the bankruptcy court or trustee of a possible claim was not enough to show an absence of bad faith. 141 F. App'x at 427. Efforts to advise the bankruptcy court *after* a motion raising a judicial estoppel issue has been filed are also insufficient. In *White,* the court determined that considering such an amendment on its own as evidence of good faith would play into the exact evils judicial estoppel aims to prevent—gamesmanship. 617 F.3d at 481.

In terms of extent and timing, Taylor's efforts present a very different picture than that in *Eubanks*. The *Eubanks* plaintiff seized upon multiple opportunities to advise the bankruptcy court of her potential civil lawsuit at different points *before* the defendants filed a

motion to dismiss. Taylor did no such thing. She only sought to re-open her bankruptcy case and amend her petition *after* the defendants in this case filed their motion to dismiss, which is exactly what the plaintiff in *White* did. Taylor makes no factual assertions that she attempted to notify her trustee or the bankruptcy court aside from her motion to reopen her bankruptcy case to amend her Petition. Though Taylor argues that she made efforts to correct her failure to disclose "as soon as she was made aware of the omission" (Dkt. 61 at 23), her actions are not the "constant affirmative actions" of the *Eubanks* plaintiff, 385 F.3d at 899 n.3, but rather are simply consistent with the plaintiff's insufficient efforts in *White*.

Taylor points to *Finney v. Free Enterprise System, Inc.*, No. 3:08-CV-383-S, 2011 U.S. Dist. LEXIS 33858 (W.D. Ky. March 29, 2011), and *Knight v. Quicken Loans*, No. 10-CV-14147, Dkt. 17, (E.D. Mich. April 21, 2011), to show that acting swiftly to amend and file a motion to reopen bankruptcy cases are sufficient to show an absence of bad faith (Dkt. 61 at 24), but these cases are not controlling. Moreover, they point to a conclusion that Taylor acted in bad faith. In *Finney*, where the plaintiff quickly amended his bankruptcy petition upon learning of his failure to

disclose his other lawsuit, there were no other facts indicating bad faith, such as an inaccurate amendment to bankruptcy filings or a disclosure of other lawsuits. 2011 U.S. Dist. LEXIS 33858, at *7-8; *see infra* Section III.b.iii. And the timing of Taylor's bankruptcy and the undisclosed lawsuit is different than in *Knight*. There, the plaintiff's bankruptcy had concluded before she brought her civil claim, and the filing of the claim was "triggered" by a meeting with her attorney, rather than the conclusion of her bankruptcy. No. 10-CV-14147, Dkt. 17 at 6-8. This mitigated the fact that the *Knight* plaintiff only reopened her case when she became aware of the discrepancy as a result of the defendant's motion. *See id.* This is not the case here, where Taylor filed this case before she filed her Petition.

Taylor also attempts to distinguish her case from *Spohn v. Van Dyke Public Schools*, 296 Mich. App. 470, 487 (2012), and *Lisiecki v. Bank of America, N.A.*, No. 08-12380, 2009 U.S. Dist. LEXIS 42868, at *11, (E.D. Mich. May 19, 2009), where the plaintiffs were found to have acted in bad faith. Taylor argues that unlike those plaintiffs, she took at least one step to notify the bankruptcy court and did not actively deny her duty to disclose after this motion was filed. (Dkt. 61 at 20.) Again, these cases

are not controlling, and regardless, these cases are consistent with finding Taylor acted in bad faith. Taylor reopened her bankruptcy case to file an amendment, which is more than the plaintiffs did in *Lewis*, *Spohn*, and *Lisiecki*. But all Taylor accomplishes is showing that she acted in less bad faith than those plaintiffs, not that she acted without bad faith. Contrary to Taylor's representations, efforts to reopen and amend after a motion to dismiss are not enough to indicate a lack of bad faith without other facts.

### ii. Effectiveness of Efforts to Advise Bankruptcy Court

Taylor's efforts to advise the bankruptcy court of her claims in this case were also ineffective. An amendment that does not reflect reflect the estimated value of the claim demonstrates the ineffectiveness of such an amendment, further cutting against a finding of good faith. *Id.* at 482. Like the plaintiff in *White*, even after this motion to dismiss was filed, Taylor still failed to make accurate amendments to her bankruptcy filings. Taylor did not amend her Property Schedule A/B so that it accurately reflected the value of her claims in this Court. She lists the value of her claims in her amended schedule as $75,000 (Dkt. 64-1 at 15), though she alleges at least $194,912.09 in medical expenses alone in this

civil action. (Dkt. 61 at 5.) There is also no indication that Taylor amended her Financial Statement where she lists possible legal actions. (*See* Dkt. 57-3 at 46, 50.)

### iii. Other Factors

Several other factors cut against a finding of good faith. First, Taylor listed other lawsuits in her Statement of Financial Affairs, as did the plaintiff in *White*. Taylor argues that she only understood the Petition to require listing lawsuits in which she owed money, but this only strengthens the conclusion here that the court in *White* reached—that inclusion of other lawsuits was evidence of a self-serving, ad hoc interpretation of the questions in the Petition. *See* 617 F.3d at 482-83. Only listing lawsuits where Taylor owed debts, which stood to be discharged at the conclusion of her bankruptcy, is not a mark of good faith. Second, this is not Taylor's first bankruptcy, but her second. No reasonable person could believe that she lacked any understanding that the bankruptcy process required disclosure of assets, including valuable lawsuits.

Construing the pleadings in the light most favorable to Taylor and accepting all of her factual allegations as true, she cannot prove any facts

that would permit her to avoid this Court's application of judicial estoppel.

### iv. Subjective reasonable mistake defense

Taylor relies on a blanket defense that she subjectively misunderstood the questions on her Schedule A/B and Statement of Financial Affairs, and that her misunderstanding was reasonable given the context and language of the Petition. (Dkt. 61 at 16-18.) This argument lacks merit. Taylor does not cite to a single case where a court has found that a subjective misunderstanding of law prevents the application of judicial estoppel. *Spohn*, which Taylor cites, finds that in cases such as this, "ignorance of the law is no excuse." 29 Mich. App at 487-88 (quoting *Riddle v. Chase Home Fin.*, No. 09-11182, 2012 WL 3504020, at *6 (E.D. Mich. Sept. 2, 2010)). "Mistake or inadvertence" is expressly discussed in *White*, and there is no indication that a subjective misunderstanding is the sort of mistake or inadvertence that should prevent the application of judicial estoppel. If anything, subjective mistakes of law without anything more would lead to the sort of gamesmanship that judicial estoppel seeks to prevent.

## IV. Conclusion

As set forth above, defendants' motion, construed as a motion for judgment on the pleadings for failure to state a claim, is GRANTED. Plaintiff Melissa Taylor's remaining claims are DISMISSED with prejudice. The remaining claims in this case are St. Pierre's claims for negligent hiring (Count V)[1] and negligent training and supervision (Count VI) against S.A.F.E. Management, and his PWDCRA claim against S.A.F.E. Management, LLC and Farmer (Count VIII).

IT IS SO ORDERED.

Dated: March 6, 2019          s/Judith E. Levy
     Ann Arbor, Michigan          JUDITH E. LEVY
                                United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 6, 2019.

                            s/Shawna Burns
                            SHAWNA BURNS
                            Case Manager

---

[1] On March 5, 2019, plaintiff voluntarily dismissed this claim on the record.